JON M. SANDS
Federal Public Defender
District of Arizona
850 W. Adams, Suite 201
Phoenix, Arizona  85007
Telephone: 602-382-2700

DEBBIE JANG
State Bar No. 035157
Asst. Federal Public Defender
Attorney for Defendant
debbie_jang@fd.org

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-21-01042-PHX-SMB |
| Plaintiff, | |
| vs. | **SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE** |
| Richard Jose Pina-Lopez, | |
| Defendant. | |

Defendant Richard Jose Pina-Lopez, through undersigned counsel, respectfully submits this memorandum for the Court's consideration in advance of the Sentencing Hearing set for August 29, 2022.  Mr. Pina-Lopez pleaded guilty on June 1, 2022 to the offense of False Statement During the Purchase of a Firearm, in violation of 18 U.S.C. § 924(a)(1)(A).  Mr. Pina-Lopez moves for a downward variance and respectfully requests a sentence of no more than twelve months and one day.

In determining an appropriate sentence, the Court must (1) determine the guideline range, (2) consider applicable departures, and (3) consider 18 U.S.C. § 3553(a) factors as a whole.  *Gall v. U.S.*, 552 U.S. 38, 49-50.  The Court need not

presume that the guideline range is reasonable "but must make an individualized assessment based on the facts presented," *id*. at 39, ensuring that the sentence meet the purposes of the sentencing statute; namely, retribution, deterrence, incapacitation, and rehabilitation, 18 U.S.C. § 3553(a). The Court may deviate from the Sentencing Guidelines if the § 3553(a) factors support it. The punishment should "fit the offender and not merely the crime." *Pepper v. United States*, 562 U.S. 476, 487–88 (2011) *citing Williams v. New York*, 337 U.S. 241, 247 (1949). A downward variance to a sentence of no more than twelve months and a day will best satisfy the § 3553(a) purposes of sentencing for several reasons.

## I. Twelve Months and One Day Custodial Sentence is Appropriate Based on Applicable § 3553(a) Factors and Other Grounds for Granting a Variance

### a. Mr. Pina Lopez's Background and Characteristics

Mr. Pina-Lopez has been in Pinal County, Arizona, for the vast majority of his life. He was born in Casa Grande and raised in Pinal County—moving from Coolidge to Florence and Arizona City, and back to Casa Grande in his late teens and early twenties. He lived with his parents and had a loving, supportive family relationship. Mr. Pina-Lopez attended high school up through senior year at Villa Oasis High School, where he was very involved in mixed martial arts in school. He continued training in various fight clubs throughout Pinal County until his recent relocation to Texas.

He began a relationship with his girlfriend in 2013 and he has two very young children, Richard (age 6) and Arisa (age 3), whom he loves dearly. Mr. Pina-Lopez is an extremely attentive father to his children and his sole focus is their growth and development. He continues to maintain a strong and supportive relationship

with them and the rest of the members of his family, including his parents and siblings.

### b. Nature and Circumstances of the Offense

Mr. Pina-Lopez began purchasing guns for himself when he was around 21 years old. As an adolescent in Casa Grande, he was friends with many of the neighborhood children. Upon his return to Casa Grande to a home on Banning Street with his parents, he was reconnected with a younger man in that neighborhood named Santos, who would end up purchasing a handful of firearms from Mr. Pina-Lopez. Mr. Pina Lopez would sell his guns when he needed additional money to pay rent or bills. Santos would also request him to purchase firearms. Mr. Pina-Lopez did not recognize at the time the severity of this offense, but he does not use that as an excuse and fully acknowledges that this conduct occurred.

Mr. Pina-Lopez ultimately ended up moving out of his parents' home to live with his girlfriend and young children. Instead of changing his address to reflect his relocation, he used the Banning Street address to receive his mail for some time. This was the address used to purchase the firearms—the offense at hand. Mr. Pina-Lopez fully acknowledges that when the rest of his family ultimately moved out of the Banning Street home in summer of 2021, he still used that same address to purchase firearms.

Mr. Pina-Lopez admitted to all these things—his purchase of firearms with the wrong address and to his sales to Santos—when first approached by Special Agents on August 18, 2021. He was forthcoming about his involvement in the offense at hand, stating he was purchasing guns for Santos and that he received

some amount of cash for his purchases to help him financially.  He continues to accept responsibility for his actions.

        *c.  Request for Variance Based on Lack of Criminal History*

Mr. Pina-Lopez has one prior misdemeanor criminal conviction in 2021 for driving with a suspended license, for which he paid a $530 fine.  Aside from that one minor conviction, he has no other interactions with the criminal legal system— no other arrests, no other charges, no other convictions.  Accordingly, his zero criminal history points, indicate the lowest risk of recidivism.

In order "to protect the public from further crimes of the particular defendant, the likelihood of recidivism and future criminal behavior must be considered." USSG, Ch. 4, Pt. A, intro. comment.  The Sentencing Commission found that two factors were most closely related to differences in recidivism rates: the defendant's criminal history and the defendant's age at time of release.[1]  Specifically, the Sentencing Commission found that recidivism rates are "closely correlated" with the total number of criminal history points, finding offenders with zero or one criminal history point had the lowest rates of recidivism at 33.8%.[2]  Further, the Sentencing Commission studied the difference in recidivism rates for offenders within CHC I and found a sizeable difference in recidivism rates for offenders with zero criminal history points and one criminal history point.[3]  Importantly, it found

---

[1] United States Sentencing Commission, *Recidivism Among Federal Offenders: A Comprehensive Overview* (March 2016), available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2016/recidivism_overview.pdf.

[2] *Id.*

[3] *See* United States Sentencing Commission, *The Past Predicts the Future: Criminal History and Recidivism of Federal Offenders* (March 2017), available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20170309_Recidivism-CH.pdf.

that "[o]ffenders with zero criminal history points have lower recidivism rates than offenders with one or more criminal history points."[4]

Defendants like Mr. Pina-Lopez, with zero criminal history points, are less culpable, less likely to reoffend, and deserving of reduced punishment. Considering all of these factors and findings of the Sentencing Commission, a custodial sentence of twelve months and a day is sufficient but not greater than necessary to protect the public and afford adequate deterrence.

### d. Request for Variance Based on Youth

Mr. Pina-Lopez at the time of the offense was 23 years old. While he was certainly not a teenager or juvenile, it was still an age where his youth played a factor into his decision-making. Case law and neuroscience research recognize that young people may not have fully developed reasoning skills until they are at least 25-years old. *See Gall v. U.S.*, 552 U.S. 38 (2007). The Sentencing Commission also acknowledges the status of "youthful offenders" as offenders 25-years old or younger at the time of sentencing.[5] Physiologically, development of the prefrontal cortex does not cease until around the age of 25. The prefrontal cortex regulates decision-making, emotional reactions, and impulse control, which underpins criminal behavior.

The Court need not sentence Mr. Pina-Lopez to more than twelve months and a day of imprisonment because his youth and lack of maturity greatly influenced his decision to commit the instant offense. Mr. Pina-Lopez made an

---

[4] United States Sentencing Commission, *Recidivism and the "First Offender"* (May 2004) at 17, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_First_Offender.pdf.

[5] United States Sentencing Commission, *Youthful Offenders in the Federal System* (May 2017), available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20170525_youthful-offenders.pdf.

irresponsible and immature decision without fully contemplating the severity of the consequences, thinking he could make money quickly or easily to pay bills or rent by buying and selling firearms.  He has since expressed remorse and regret for his decision—owning up to his actions with investigators and accepting the potential punishment he now faces.

　　　e.  *Future Plans*

Mr. Pina-Lopez has done exceedingly well on pretrial release, with the exception of forgetting to contact his pretrial service officer about his relocation to Texas.  He has since rectified that situation.  *See* ECF No. 27.  Mr. Pina-Lopez's adjustment to pretrial supervision was considered "positive" and he has not had any new arrests, warrants, or convictions.  ECF No. 21.  He has maintained stable employment and has been financially and emotionally supporting his family.

Mr. Pina-Lopez has learned a difficult lesson through this offense. Following any custodial sentence, Mr. Pina-Lopez is hoping to obtain his GED and work in the oil fields with his uncle or security with his brother.  He is also eager to relocate to Texas to be near his unconditionally supportive family and continue to raise and support his children.

.

## II.      Conclusion

For the foregoing reasons, Mr. Pina-Lopez respectfully requests that the Court to impose a sentence of no more than twelve months and a day.

Respectfully submitted:   August 22, 2022.

JON M. SANDS
Federal Public Defender

*s/Debbie Jang*
DEBBIE JANG
Asst. Federal Public Defender